# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**ARCADIA MOON,**

Plaintiff,                                          Civ. No. 3:14-cv-00855-PA

v.                                                          **ORDER**

**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

Defendant.

---

PANNER, District Judge.

Plaintiff Arcadia Moon ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Title II Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423. For the reasons below, the Commissioner's decision is REVERSED and REMANDED for payment of benefits.

## BACKGROUND

Born in October 1969, Plaintiff was 39 years old on the alleged disability onset date of September 30, 2009. Tr. 45. Plaintiff speaks English and graduated from high school. Tr. 33. In December 2010, Plaintiff filed an application for DIB, alleging disability due to attention deficit hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), generalized anxiety disorder, major depressive disorder, insomnia, social anxiety/phobia, and transgender status. Tr. 45.

The Commissioner denied Plaintiff's application for DIB initially and upon reconsideration and she requested a hearing before an Administrative Law Judge ("ALJ"). Tr.

14. After an administrative hearing held on December 19, 2012, ALJ Riley J. Atkins issued a

decision finding Plaintiff not disabled. Tr. 14-24. The Appeals Council denied Plaintiff's

subsequent request for review, making the ALJ's decision the final Agency decision. Tr. 1-3; 20

C.F.R. § 422.210.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20

C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following

series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving
    significant mental or physical duties done or intended to be done for pay
    or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing
    such work, she is not disabled within the meaning of the Act. 20 C.F.R.
    §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing
    substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless
    expected to result in death, an impairment is "severe" if it significantly
    limits the claimant's physical or mental ability to do basic work activities.
    20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted
    or must be expected to last for a continuous period of at least 12 months.
    20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe
    impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii);
    416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis
    proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the
    impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,

then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett,* 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 30, 2009. Tr. 16. At step two, the ALJ found that Plaintiff had the following severe impairments: anxiety disorder, NOS; post-traumatic stress disorder, in partial remission; and depression. *Id.* At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal a listed impairment. *Id.*

In assessing Plaintiff's RFC, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: 1) she is limited to unskilled to low-semiskilled work; 2) she should have no public contact; and 3) she should have only brief, routine interactions with coworkers and supervisors. Tr. 18.

At step four, the ALJ found that Plaintiff is capable of performing her past relevant work as a delivery driver. Tr. 22. Although the ALJ found Plaintiff able to perform past work, he still conducted the step five analysis as an alternative basis for finding Plaintiff not disabled. *Id.* At step five, based on the testimony of a vocational expert, the ALJ determined that Plaintiff could perform jobs that exist in significant numbers in the national economy, including prep cook, warehouse worker, and hand packager. Tr. 22-23. The ALJ therefore concluded that Plaintiff was not disabled. Tr. 23-24.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means

"more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r,* 554 F.3d 1219,

1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Id.*

Where the evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th

Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading of the record, and this court may not substitute its judgment

for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a

reviewing court must consider the entire record as a whole and may not affirm simply by

isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th

Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

Even where findings are supported by substantial evidence, "the decision should be set

aside if the proper legal standards were not applied in weighing the evidence and making the

decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42

U.S.C. § 405(g), the court has the power to enter, upon the pleadings and transcript record, a

judgment affirming, modifying, or reversing the decision of the Commissioner, with or without

remanding the case for a rehearing.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) improperly discrediting Plaintiff's testimony and

(2) improperly rejecting the opinion of Plaintiff's mental health counselors.

**I.     The ALJ improperly discredited Plaintiff's testimony.**

When gauging a claimant's credibility, an ALJ must engage in a two-step process. 20

C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether there is objective medical

evidence of an underlying impairment that could reasonably be expected to produce some degree

of the alleged symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Second, if such

evidence exists, barring affirmative evidence of malingering,[1] the ALJ must give clear and

convincing reasons for discrediting the claimant's testimony regarding the severity of the

symptoms. *Id.* at 1284; *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). A

general assertion that the Plaintiff is not credible is insufficient. The ALJ must identify what

testimony is not credible and what evidence undermines the claimant's allegations. *Dodrill v.*

*Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Plaintiff testified that she suffers from anxiety and agoraphobia which prevent her from

leaving her home for more than four hours at a time. Tr. 37.  She takes medication for her

anxiety, including anti-depressants and medication for her PTSD symptoms.  Tr. 38.  She

testified that she regularly experiences panic attacks from loud noises, or becomes shaky and

nervous if she is out of her home for long periods of time. Tr. 37.  Her anxiety will sometimes

manifest as anger, irritability, distrust, a sense of threat, or fear.  Tr. 38.  Although she is able to

work as a volunteer three days a week for 3.5 hours per day, she testified that any attempt to

volunteer for a full day exacerbates her anxiety for two or three days afterwards. Tr. 37-38.

The ALJ found that Plaintiff's impairments could be reasonably expected to cause her

alleged symptoms. Tr. 18-19. However, he found Plaintiff's statements regarding the intensity,

persistence, and limiting effects of these symptoms not entirely credible. Tr. 19. The ALJ

provided four primary reasons for this determination: (1) Plaintiff's symptoms are

---

[1] The ALJ found no evidence of malingering in this case.

disproportionate to the objective and clinical findings, (2) Plaintiff's treatment has been essentially routine and/or conservative in nature, (3) Plaintiff's described daily activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations, and (4) Plaintiff stopped working for reasons unrelated to her allegedly disabling impairments. Tr. 19-21. Plaintiff contends that the ALJ erred by failing to provide clear and convincing reasons for rejecting her testimony. I agree.

### a. The ALJ erred in finding Plaintiff's testimony not fully supported by the treatment record.

The first reason the ALJ provides for discrediting Plaintiff's subjective testimony is that Plaintiff's "symptoms are disproportionate to the objective and clinical findings." Tr. 19. An ALJ may not discredit a plaintiff's testimony solely "because no objective medical evidence support[s] [their] testimony," *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), but may consider a lack of objective evidence as one element in his analysis. *Burch,* 400 F.3d at 680; 20 C.F.R. § 404.1529. In making a credibility finding, the ALJ must also look to reasons "unrelated to the subjective testimony (e.g., reputation for dishonesty), conflicts between his testimony and his own conduct, or internal contradictions in that testimony." *Robbins,* 466 F.3d at 884.

First, the ALJ cites a treating physician's observations as to Plaintiff's cognitive and neurological functioning. Tr. 19. In *Ghanim v. Colvin,* 763 F.3d 1154, 1164 (9th Cir. 2014), the ALJ pointed to treatment notes where the plaintiff was "upbeat," maintained "good eye contact," had "organized and logical thought content," and was able to maintain "focused attention." The Ninth Circuit held that these observations did not undermine the plaintiff's symptoms associated with depression and anxiety. *Id.* The court went on to explain that "the ALJ's reliance on [the

physicians'] observations about cognitive functioning [was] misplaced" as the plaintiff did not allege any cognitive issues. *Id.*

Here, the ALJ cites comparable medical evidence regarding Plaintiff's cognitive functioning:

> The claimant was seen by Robert Henriques, MD on October 19, 2010, for follow-up. The claimant indicated that her agoraphobia improved on Citalopram, but her anxiety and depression persisted. On exam, the claimant was alert and in no apparent distress. The claimant's affect and speech were normal.

Tr. 19. The ALJ also highlights other treatment notes where doctors observe Plaintiff's "grooming and hygiene were good," and that she was able to recall seven digits forward and five in reverse. Tr. 20. However, like the plaintiff in *Ghanim*, Plaintiff does not allege any cognitive or neurological impairments, and these notes speak only briefly as to her social anxiety, noting that Plaintiff's "posture was relaxed, with no sign of anxiety," and that she was "able to engage appropriately in light social interchange." Tr. 20. As the relationship between her cognitive functioning and her impairments is quite attenuated, such evidence does not support the ALJ's finding that the treatment record does not support Plaintiff's testimony.

The ALJ also noted that during a group therapy session on March 19, 2011, Plaintiff was able to act as the group's disc jockey and that she was "kind and patient with other group members." Tr. 19. As Plaintiff points out, however, the ALJ entirely neglected to address another, later incident in which Plaintiff acted as group disc jockey, but became "enraged" at technical difficulties, engaged in self-harm, and yelled at the group members. Tr. 416. The clinician who prepared that report attributed Plaintiff's behavior to an inability to cope with anxiety in group settings. *Id.* The ALJ improperly highlighted one positive example from Plaintiff's treatment notes without addressing the numerous instances where Plaintiff experienced difficulty with social functioning. *See, e.g.,* Tr. 455, 592, 615, 664. An ALJ must

not "cherry-pick" certain observations without considering their context. *Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998); *Ghanim*, 763 F.3d at 1164. And although there are positive treatment notes in the record, the Ninth Circuit has observed that when "a person who suffers from severe panic attacks, anxiety, and depression makes some improvement [that] does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). "Occasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995). I conclude, therefore, that the ALJ has not provided clear and convincing reasons for discounting Plaintiff's testimony based on conflict with the objective and clinical findings.

### b. The ALJ erred in finding that the routine or conservative nature of Plaintiff's treatment undermined her credibility.

The ALJ noted  that "[a]lthough Plaintiff has received treatment for allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature." Tr. 20. "Conservative treatment" may be sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). However, the fact that treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available. *See Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) (ALJ erred in relying on "conservative treatment" basis for rejecting the plaintiff's testimony when "the record does not reflect that more aggressive treatment options are appropriate or available.").

The record does not support the ALJ's finding of a "conservative and/or routine" treatment regimen. Although, as the ALJ noted, Plaintiff has not been hospitalized during the

relevant period, there is no indication that hospitalization would be a more appropriate treatment than what she currently receives. Tr. 20. Plaintiff has engaged in a considerable amount of regular mental health counseling and medication management. Tr. 426. Plaintiff also takes a number of medications to treat her symptoms. Tr. 38-39. Plaintiff's counselors report that she is fully committed to her treatment, citing her regular attendance, full participation, and compliance with her treatment providers. Tr. 693, 697. And although it appears that Plaintiff experiences some relief from her symptoms as a result of her medication, such periodic relief of symptoms is not inconsistent with disability. *Lester*, 81 F.3d at 833. I conclude that Plaintiff's treatment regimen does not provide a clear and convincing reason for discounting her testimony.

**c. The ALJ erred in finding Plaintiff's claims of debilitated functioning are not consistent with contemporaneous reports regarding her actual functioning.**

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick*, 157 F.3d at 722, and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping...does not in any way detract from his credibility," *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). In order to impact a claimant's credibility, the activity has to be "inconsistent with [the claimant's] claimed limitations." *Reddick*, 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the claimant's credibility. *Id.* at 722-23.

In his decision, the ALJ stated that Plaintiff's activities of daily living are "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Tr. 20. In support of this, the ALJ cites the positive treatment session in which Plaintiff acted as disc

jockey for her group. Tr. 20-21. Once again, the ALJ fails to note that, approximately one year later, Plaintiff's attempt to serve as a group disc jockey ended in frustration, anger, and self-harm. Tr. 416. Placed within the larger context of Plaintiff's treatment history, this one positive episode does not undermine Plaintiff's testimony about her limitations.

The ALJ also noted that Plaintiff entered into a new romantic relationship in 2011, and experienced "increased feelings of happiness and hopefulness related to a new personal relationship" in 2012. Tr. 21. As noted, however, claimants should not be penalized for attempting to lead normal lives in the face of their limitations. Plaintiff does not have to be "utterly incapacitated" to be found disabled. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The record indicates that, despite Plaintiff's success in pursuing at least two new personal relationships, she continued to experience difficulties in social functioning.

Finally, the ALJ noted that Plaintiff is able to perform volunteer work. Tr. 21. Plaintiff testified that she is able to work as a volunteer for Free Geek for 3.5 hours per day, three days per week. Tr. 37. Plaintiff also testified that she has attempted to work full days as a volunteer, but found that doing so resulted in exacerbation of her symptoms. Tr. 37-38. Plaintiff's volunteer schedule is consistent with her testimony that she is unable to function outside of her home for more than four hours at a time. Tr. 37. I conclude, therefore, that Plaintiff's volunteer work and activities of daily living do not provide a clear and convincing reason to reject her testimony.

### d. Plaintiff's reasons for leaving her last job.

The ALJ found that "[t]here is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments." Tr. 21. Plaintiff's last job was as a CNA at a psychiatric facility. Tr. 21, 33. At the hearing, Plaintiff testified that she left that job because it

was too stressful and traumatizing. Tr. 36. In September 2009, at the end of her employment as a CNA, Plaintiff took vacation time to visit her significant other in Canada. Tr. 41. After her significant other proposed marriage, Plaintiff quit her job as a CNA and moved to Canada, where she remained until July 2010. Tr. 204.

In assessing a claimant's credibility, the ALJ is entitled to use "ordinary techniques of credibility evaluation, such as a claimant's reputation for truthfulness and any inconsistent statements in her testimony." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). A claimant's reason for leaving employment is a valid consideration in weighing credibility. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Plaintiff's testimony and the record show that Plaintiff moved to Canada to live with her significant other at approximately the same time that she quit her job as a CNA. Tr. 40-41, 202. Plaintiff sought counseling while in Canada and the record shows that Plaintiff's U.S. citizenship prevented her from accessing services or considering legal employment while she was in Canada. Tr. 207. On this basis, the ALJ concluded that Plaintiff left her employment as a CNA for reasons unrelated to her disabilities. Tr. 21. Plaintiff persuasively argues that she left her job for more than one reason, and that the primary motivator was her disability. Nevertheless, where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

On the record before me, however, I cannot confidently conclude that the ALJ provided clear and convincing reasons to support his decision to assign little weight to Plaintiff's subjective symptom testimony.

## II.    Opinion of Plaintiff's Mental Health Counselors.

The ALJ considered, but assigned little weight to the the opinions of Sandra Ford, PA-C, and Carol Roberts, QMHP, both of whom opined that Plaintiff's impairments prevent her from working. Tr. 693, 697. The ALJ found that Ford's opinion "is not supported by the medical evidence of record, including Ms. Ford's own treatment notes, and appears to be based primarily on the claimant's subjective complaints." Tr. 21. The ALJ gave little weight to Roberts's opinion because "it does not comport with the objective evidence as a whole and appears to be based mainly on the claimant's subjective complaints." Tr. 21.

In order to reject the testimony of a medically acceptable treating source, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record. *Valentine v. Comm'r*, 574 F.3d 685, 692 (9th Cir. 2009). However, physicians' assistants, nurse practitioners, and QMHP are defined as "other sources," not acceptable medical sources, and are thus entitled to lesser deference. 20 C.F.R. § 404.1513(d); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The ALJ need only give germane reasons to discount such opinions. *Molina*, 674 F.3d at 1111.

An ALJ may reject lay witness testimony if it is based on a claimant's symptom testimony that has been properly discounted as not credible. *Valentine,* 574 F.3d at 694. However, as discussed above, the ALJ has not properly discounted Plaintiff's testimony. Thus, this is not a germane reason for discounting their opinions.

The opinions of "other" medical sources may also be rejected if they are unsupported by treatment notes or objective findings. *See Blodgett v. Comm'r*, 534 F. App'x 608, 610-11 (9th Cir. 2013) (affirming the ALJs decision to accord little weight to "other" medical sources because their opinions were inconsistent with the treatment record). Roberts opined that Plaintiff

"is easily triggered by her symptomology" and that she "is not able to function in a working environment, at this time, due to her triggers and related emotionality and symptomology." Tr. 693. Similarly, Ford concluded that Plaintiff's "symptoms would keep [her] from following even simple instructions and prevent her from presenting to work reliably." Tr. 697.

The ALJ erred in finding that the opinions of Roberts and Ford conflicted with the objective and medical evidence in the record. The Commissioner argues that the ALJ implicitly accepted the opinions of Jane Starbird, Ph.D., an examining psychologist, and Robert Henriques, M.D., whose opinions contradict those of Roberts and Ford. Dr. Starbird examined Plaintiff on April 19, 2011. Tr. 353-57. Dr. Starbird noted that Plaintiff "did not appear anxious during the evaluation," but assigned a diagnosis of "anxiety disorder, NOS." Tr. 356. Dr. Starbird noted that Plaintiff was "a moderate or poor historian," with "limited" insight and "variable" judgment. *Id.* She found that Plaintiff's symptoms "are variable, waxing and waning depending on other stressors." Tr. 357. Dr. Starbird also found Plaintiff's self-report of her symptoms to be credible. Tr. 356. Dr. Starbird's observations are borne out in the record, which shows Plaintiff's variable level of social functioning. I find no conflict between Dr. Starbird's report and the opinions of Roberts and Ford.

Dr. Henriques's notes are extremely brief, noting "[a]ffect normal, [s]peech normal, no delusional thinking or psychotic ideation." Tr. 256, 259. As Plaintiff's limitations stem from anxiety, depression, PTSD, and social functioning difficulties, it is not clear how a lack of delusional thinking or psychotic ideation contradicts the opinions of Roberts or Ford. Moreover, Dr. Henriques did assess and plan treatments for Plaintiff's depression and anxiety, which included prescribing and adjusting medication. Tr. 243, 251, 255, 259.

The ALJ also stated that Ford's opinion was not supported by her treatment notes. A contradiction between a medical source's assessment of a claimant's disability and the source's other notes and observations provides a clear and convincing reason for rejecting that source's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). In this case, the Commissioner points to Ford's many treatment notes where "no abnormalities" were noted. *See, e.g.*, Tr. 389-90. Ford's notes also indicate, however, that Plaintiff's progress was variable. For instance, on October 10, 2011, Plaintiff reported anger issues and fighting, which Ford followed up with medication. Tr. 457. In January 2012, Ford noted that Plaintiff's affect was anxious. Tr. 642. In February 2012, Ford assessed Plaintiff with a GAF of 48, denoting "severe symptoms" or "serious impairment in social, occupational or school functioning," and her affect was again noted as "anxious." Tr. 429, 431. The fact that Ford's notes generally indicate no abnormalities with Plaintiff's affect or behavior in group counseling sessions is not inconsistent with Ford's opinion that "it is difficult for [Plaintiff] to be appropriate with the public because of her anxiety," and that her "symptoms cause her to isolate" and would "prevent her from presenting to work reliably." Tr. 697.

The ALJ did not provide germane reasons for discounting the opinions of Roberts or Ford. In doing so, the ALJ committed legal error. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."). This error is not harmless because the Court cannot confidently conclude that no reasonable ALJ could have reached a different disability determination had the reports been fully credited. *Stout v. Comm'r*, 454 F.3d 1050, 1056 (9th Cir.

2006). Accordingly, the ALJ's decision to reject their opinions must be reversed. *Lingenfelter*, 504 F.3d at 1045.

## REMAND

"The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). Generally, when a court reverses an administrative decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart,* 379 F.3d 587, 595 (9th Cir. 2004) (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002)). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989); *Smolen*, 80 F.3d at 1292.

Under the credit-as-true rule, a court should remand to an ALJ with instructions to calculate and award benefits if three factors are satisfied:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

I have determined the ALJ erred when he concluded Plaintiff was not fully credible and when he rejected the opinions of Sandra Ford and Carol Roberts. If credited, those opinions establish that Plaintiff is disabled. Thus, the Court concludes Plaintiff is disabled based on this medical record and no useful purpose would be served by a remand of this matter for further proceedings.

## ORDER

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and the matter is REMANDED to the Commissioner for the immediate calculation and payment of benefits to Plaintiff.

IT IS SO ORDERED.

DATED this _____ day of September, 2015.

OWEN M. PANNER
United States District Judge